Matter of Cahill v New York State Dept. of Mental Hygiene (2025 NY Slip Op 03235)

Matter of Cahill v New York State Dept. of Mental Hygiene

2025 NY Slip Op 03235

Decided on May 29, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 29, 2025

CV-24-0652
[*1]In the Matter of the Claim of Lynn Cahill, Respondent,
v
New York State Department of Mental Hygiene et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:April 29, 2025

Before:Egan Jr., J.P., Aarons, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

The Law Offices of Melissa A. Day, PLLC, Amherst (Brian K. Prince of counsel), for appellants.
Ouimette, Goldstein & Andrews, LLP, Poughkeepsie (Louis M. Dauerer of counsel), for Lynn Cahill, respondent.
Letitia James, Attorney General, New York City (Nina M. Sas of counsel), for Workers' Compensation Board, respondent.

Fisher, J.
Appeal from a decision of the Workers' Compensation Board, filed March 6, 2024, which ruled, among other things, that preauthorization for claimant's surgery was not required because it was performed under an emergency basis.
Claimant sustained a work-related injury to her left knee in 1992 and her claim for workers' compensation benefits was established. Claimant was subsequently found to have sustained a 50% schedule loss of use of that knee and, in 2012, claimant had total knee replacement surgery that was causally-related to her work injury. After experiencing continued pain, stiffness and swelling in her knee postsurgery, claimant underwent surgical revisions in 2013, 2014 and 2016. In September 2020, claimant went to the emergency room complaining of left knee pain and an inability to walk. Irrigation and debridement of the left knee was performed, and claimant was prescribed antibiotics.[FN1] In October 2020, Frank Lombardo, her orthopedic surgeon, diagnosed claimant with a periprosthetic infection and advised her that the antibiotics may not cure the infection and that further surgery, including cement spacer removal of the knee replacement components, may be required. Lombardo further cautioned that the condition of her knee put her at greater risk of continued infection and possible amputation. In March and April 2022, claimant saw Lombardo, who reported that claimant was feeling mild pain. Lombardo informed claimant that a biopsy test revealed she had a chronic infection and explained that her only treatment options were either cement spacer surgery or chronic suppressive antibiotic therapy. Claimant opted for the antibiotic therapy. At a follow-up July 2022 examination, claimant reported less pain and the examination revealed less drainage, but testing revealed some level of infection remained. Lombardo again reviewed the two treatment options, claimant again deferred surgery and continued antibiotics were prescribed.
On September 28, 2022, claimant saw Lombardo complaining of increased drainage from the knee. Following his examination, Lombardo informed claimant that her ongoing infection was no longer amenable to antibiotic therapy and there was a risk of amputation. Lombardo strongly recommended surgery and offered her the option of immediately going to the emergency room for direct admission to the hospital. Claimant consented to the surgery but still wanted to give the matter more thought. Lombardo then made an "urgent request" for the carrier's authorization of the surgery. The following day, the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) notified claimant that it would schedule an independent medical examination of her and submit the results in 30 days. Also that day, claimant was examined by an infectious disease physician who confirmed the infection and advised claimant that if she developed certain symptoms, including fever, increase in pain and redness or swelling of the [*2]knee, that she should immediately go to the emergency room. On October 1, 2022, claimant presented to the emergency room complaining of increased pain, redness of the knee, fever and increased drainage of the knee, and claimant was admitted to the hospital. Lombardo performed the cement spacer surgery on October 4, 2022, without the carrier's authorization. Claimant remained hospitalized until October 21, 2022.
On December 5, 2022, the carrier objected to being responsible for claimant's treatment from October 1 to October 21, 2022, including the cement spacer surgery, because the carrier had not provided proper authorization for such treatment pursuant to Workers' Compensation Law § 13-a (5). Following a hearing on this issue and to address multiple C-8.1 forms filed by the carrier disputing its obligation to pay various other medical treatments of claimant, a Workers' Compensation Law Judge (hereinafter WCLJ) found that the carrier was responsible for the cost of the October 4, 2022 surgery and related treatment because the surgery was performed on an emergency basis and the disputed medical bills were resolved in favor of the medical providers. Upon administrative review, the Workers' Compensation Board modified the WCLJ's determination, affirming, as related here, that part that found the carrier responsible for the cost of claimant's October 4, 2022 surgery. The carrier appeals.
We affirm. The carrier argues that the Board erred in finding that claimant's October 2022 surgery was performed due to an emergency and that neither the Board nor the WCLJ addressed its contention that claimant's choices in not getting the surgery sooner and her delay in reporting the onset of worsening symptoms in September 2022 were superseding causes of her surgery and hospitalization, negating its liability. Generally, no claim for surgery costing more than $1,000 shall be valid and enforceable unless the employer, its workers' compensation carrier or the Board has provided authorization for said surgery (see Workers' Compensation Law § 13-a [5]). There are exceptions to the authorization requirement, however, including, as relevant here, when such surgeries "are required in an emergency" (Workers' Compensation Law § 13-a [5]; see Matter of Langenmayr v Syracuse Univ., 309 AD2d 1090, 1091 [3d Dept 2003]). According to the Board, "[a]n emergency occurs in cases of unforeseen illness or injury in a patient that requires expeditious medical, surgical, or psychiatric care," relying on a definition included in a policy statement issued by the American College of Emergency Physicians (see also Employer: Evergreen Intl. Aviation, 2014 WL 3544316, *2, 2014 NY Wrk Comp LEXIS 04449, *5 [WCB No. 0050 3553, July 14, 2014]).
Initially, we reject the carrier's contention that claimant's condition did not constitute an emergency because it was not unforeseen pursuant to the Board's definition.[FN2] Clearly, the possibility that the antibiotic treatment would not contain claimant's [*3]infection and that surgery might be required was discussed with claimant during the course of her treatment. We note, however, that, in a written statement dated February 9, 2023, Lombardo explained that when he examined claimant on September 28, 2022, she "had a known history of chronic infection that was well contained but over [the] prior month that infection was no longer suppressed with antibiotics." Lombardo's examination report from July 20, 2022 supports his opinion, as he noted at that time that claimant felt less pain and discomfort, had no drainage from the knee and her erythema had improved significantly. Based upon his examination of claimant on September 28, 2022, Lombardo stated that her infection caused him concern that she "would develop sepsis and this would result in possible mortality" and his report from that examination reflects that he strongly advised claimant to report to the emergency room immediately for admission into the hospital. According to Lombardo, the subsequent October 4, 2022 surgery "was necessary and [an] emergency as [a] result of acute worsening of [claimant's] chronic infection."[FN3] Given the foregoing, despite the understanding that surgery may be required at some point, we find that the acute worsening of claimant's infection in September 2022 was unforeseen and constituted an emergency that necessitated surgery prior to waiting potentially 30 days for the carrier's authorization.[FN4] Accordingly, substantial evidence supports the Board's determination that claimant's condition presented an emergency situation obviating the need for prior authorization of the surgery from the carrier (see Workers' Compensation Law § 13-a [5]; Matter of Langenmayr v Syracuse Univ., 309 AD2d at 1091; Matter of West v High Path Stock Farm, 71 AD2d 769, 769 [3d Dept 1979]; Kraeger v Georgia-Pac. Corp., 53 AD2d 929, 930 [3d Dept 1976]).
Contrary to the carrier's contention, its argument that claimant's actions in delaying the cement spacer surgery between 2020 and 2022 and her three-week delay in reporting her symptoms of a worsened infection in September 2022 were unreasonable and were the cause of her surgery and hospitalization, was addressed by the WCLJ in compliance with 12 NYCRR 300.5 (a). To that end, the WCLJ discussed claimant's medical history regarding her total knee replacement in 2012, various revision surgeries between 2013 and 2016, noted that claimant was advised of her infection in 2020 and that she was receiving ongoing antibiotic therapy prescribed by Lombardo until her infection worsened in September 2022.[FN5] The WCLJ further credited Lombardo's testimony regarding claimant's general nervousness and her concern of possible exposure to the COVID-19 virus in explaining why claimant did not report to the emergency room for surgery on September 28, 2022. We note that in his written statement, Lombardo explained that when he examined claimant on September 28, she "had a known history of chronic infection that was well [*4]contained but over [the] prior month that infection was no longer suppressed with antibiotics." Lombardo's examination report indicated that claimant informed him on September 28 that she had been experiencing drainage from her knee for about three weeks. During his deposition, Lombardo testified that he considered claimant waiting that long to seek treatment to be unreasonable because "immediate attention to an infection provides enhanced results." However, Lombardo did not testify that, nor is there any other medical evidence in the record reflecting that, if claimant had reported her symptoms earlier in September 2022, the nature of her condition would not have been emergent or that there would have been any change in the treatment ultimately provided her. In addressing the carrier's argument regarding claimant's choices and the impact on the carrier's liability, the WCLJ stated that she would not make a determination as to whether those choices were reasonable or unreasonable but concluded that there was nothing regarding those choices "that would take this and sever the carrier's responsibility for [claimant's] ongoing treatment." Based upon our review of the record, we find that the Board's implicit affirmance of the WCLJ's determination that claimant's actions did not negate the carrier's liability for her treatment from October 1 to October 21, 2022 is supported by substantial evidence and will not be disturbed (see generally Matter of Wallace v Oswego Wire, Inc., 29 AD3d 1057, 1058 [3d Dept 2006]).Claimant's remaining contentions, to the extent not specifically addressed, have been considered and found to be without merit.
Egan Jr., J.P., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1: Sometime after the 2016 debridement, claimant moved to South Carolina but continued to seek treatment for her injury in New York.

Footnote 2: We also reject the carrier's related claim that claimant's condition did not constitute an emergency because it is not contained within a list of certain conditions characterized as emergencies by the Board in its decision (see also Employer: Evergreen Intl. Aviation, 2014 WL 3544316 at *2, 2014 NY Wrk Comp LEXIS 04449 at *5), as that list is not exhaustive.

Footnote 3: The term "acute" when used as an adjective is defined as "characterized by sharpness or severity of sudden onset" (Merriam-Webster Online Dictionary, acute [http://www.merriam-webster.com/dictionary/acute]).

Footnote 4: The carrier also argues, unpersuasively, that, because Lombardo used both the terms "emergency" and "urgent" or "urgently" at times when referring to the October 4, 2022 surgery, his testimony is contradictory. Lombardo testified that he believed that the surgery should have been performed on an emergency basis on September 28, 2022, but that he delayed the surgery because claimant was nervous due to her possible exposure to the COVID-19 virus at the emergency room. Although Lombardo testified that he then performed the surgery urgently after that delay, under these circumstances, we find that Lombardo's use of the terms "emergency" and "urgently" constitutes a difference without a distinction (see e.g. Employer: Guilderland Ctr. Nursing, 2014 WL 935573, *4, 2014 NY Wrk Comp LEXIS 09812, *10 [WCB No. 5980 1293, Feb. 28, 2014].

Footnote 5: The record reflects that Lombardo advised claimant in October 2020 that her infection may not be curable, and that surgery may be needed at some point, but he only prescribed chronic suppressive antibiotic therapy at that time.